UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


ALVIN T. SIMPSON                                    PLAINTIFF


VS.                        CIVIL ACTION NO.: 3:13CV424TSL-JMR

ALCORN STATE UNIVERSITY;
M. CHRISTOPHER BROWN, INDIVIDUALLY
AND OFFICIAL CAPACITY; SAMUEL WHITE,
INDIVIDUALLY AND OFFICIAL CAPACITY;
ROBERT Z. CARR, JR., INDIVIDUALLY AND
OFFICIAL CAPACITY; MALINDA BUTLER,
INDIVIDUALLY AND OFFICIAL CAPACITY;
DORIS E. MCGOWAN, INDIVIDUALLY AND
OFFICIAL CAPACITY; BOARD OF TRUSTEES OF
INSTITUTIONS OF HIGHER LEARNING;
MISSISSIPPI INSTITUTIONS OF HIGHER LEARNING        DEFENDANTS


MEMORANDUM OPINION AND ORDER

From 1991 until his resignation in May 2012, plaintiff Alvin

T. Simpson was employed as a professor in the Department of

Education and Psychology of Alcorn State University (ASU) pursuant

to a series of contracts with the Mississippi Institutions of

Higher Learning (IHL).  From 2008 to 2011, he also served as

interim Chair of the Department of Education and Psychology.

Simpson filed the present action on May 10, 2013 against ASU, IHL

and a number of ASU officials and employees, asserting putative

claims for disability discrimination under the Rehabilitation Act,

29 U.S.C. § 794; violation of the Family Medical Leave Act, 29

U.S.C. § 2601 *et seq.*; violation of his due process rights under

the Fourteenth Amendment; retaliation for the exercise of his

First Amendment rights; for conspiracy ostensibly in violation of 42 U.S.C. §§ 1983 and 1985; and for breach of contract.[1]  The case is presently before the court on a motion by all defendants to dismiss or, in the alternative, for summary judgment.

Despite having requested and received two extensions of time to respond to the motion, plaintiff failed to timely respond to the motion.  He did finally file a response, two weeks beyond the latest deadline established by the court at his request; and he did so without seeking a further extension or leave to file his response out of time.  Given these circumstances, defendants have understandably moved to strike plaintiff's response.  It is a reasonable request, and the court certainly would be well justified in striking the response.  However, since nothing in the response alters this court's view that dismissal is in order, the court will deny the motion to strike.

---

[1]    The case was originally filed in the Circuit Court of Hinds County, Mississippi, but was timely removed by defendants on the basis of federal question jurisdiction under 28 U.S.C. § 1331. The court notes that while defendants assert Eleventh Amendment immunity as a basis for dismissal of plaintiff's federal claims against IHL, ASU and the individual defendants in their official capacities, their removal of the case operated as a waiver of such immunity.  See Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 623-24, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002) (holding that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter ... in a federal forum").

Plaintiff's Complaint

The allegations of plaintiff's complaint relate to troubles that began in mid 2009, after he reported to an IHL auditor that defendant Doris McGowan, an ASU employee, had forged his signature on a payment authorization to pay $5,000 to ASU employee Doris Gary (resulting in Gary's termination in July 2009 but not McGowan's). Plaintiff alleges that McGowan and her husband began engaging in retaliatory conduct toward him. In October 2009, plaintiff made an official complaint to ASU about the McGowans' conduct; but ASU took no action in response to his complaint and therefore, on October 14, 2009, he reported the McGowans' "criminal activity" to the Attorney General's office.

At some point subsequent to Gary's termination, defendant Robert Carr was installed as Dean of the Department of Education and Psychology. Plaintiff alleges that although Carr knew of the reason for Gary's termination and had been specifically advised by IHL that she was ineligible for rehire, Carr nevertheless rehired her in September 2010 as an adjunct professor without seeking input from plaintiff, for whom he expressed disdain for having been a whistleblower. Plaintiff states that he complained about Carr's "unlawful conduct," and that contrary to ASU policy, he was not evaluated during the 2010-11 academic year and consequently did not receive a pay raise in January 2012.

Plaintiff alleges that in August 2010, he informed Carr of his "health problems and spinal cord injury."  The following month, plaintiff was hospitalized because of his "disability."  He claims that Carr "pestered" and "intimidated" him into returning to work before he was well, and then, upon his return to work, imposed additional job assignments on plaintiff for the specific reason of "agitating and harassing" him.  Specifically, after the officer manager retired in October 2010, Carr refused to hire an office manager to provide plaintiff assistance, causing plaintiff to have to take on secretarial tasks, which "agitated his medical condition."

The complaint states that in late 2010, Carr formed a "search committee" to select a permanent chair for the Department of Education and Psychology, which committee was comprised of "predominantly female employees with whom Carr knew plaintiff had adversarial relationships."  One such member was a Barbara Martin, who "carried a grudge" against plaintiff because he had not supported her application for promotion to professor.  Plaintiff alleges that although he qualified and applied for the position, the committee recommended Malinda Butler for the position, notwithstanding that she did not possess the requisite academic rank to qualify for the position; and in June 2011 Carr announced his selection of Butler for the position.  Plaintiff alleges that following the alleged "unlawful" choice of Butler over plaintiff

as permanent Department Chair, Butler commenced to engage in retaliatory conduct against him, forcing him to vacate his office and move into her old office in an attempt to humiliate him, and then failing to give him a key to the office, leaving him with no access to any office for nearly a month in the summer of 2011. Further, in July 2011, at a time when he was teaching three online classes, Butler sent a letter threatening to terminate him based on his having been absent from the University for more than twenty days, i.e., not physically "on campus", without having received approved FMLA leave for such absence.  Plaintiff alleges that other non-disabled faculty members were allowed to teach online courses without threat of termination.

On July 29, 2011, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), complaining of gender discrimination with respect to his claimed "demotion" from his position as interim Department Chair and disability discrimination and retaliation with respect to his threatened termination.  Around the same time as his EEOC charge, he filed a formal grievance with defendant Samuel White, Vice President for Adacemic Affairs, claiming that Butler was unqualified for the position of Department Chair.  However, White refused to process the grievance, which led plaintiff to turn to IHL for assistance.  He alleges that ASU President Christopher

Brown became so angry with him for having contacted IHL that he refused to meet with or discuss any issues with plaintiff.

Ultimately, defendants did schedule a hearing for December 13, 2011.  At the time, plaintiff he was approved FMLA leave due to his medical condition.  At this time, plaintiff was also the subject of an allegation of sexual harassment by a male student. Plaintiff alleges that defendants, in direct retaliation for his complaints to IHL about his concerns, leaked to the news media that he would be on campus on December 13 for a grievance hearing so that the media could catch him on film.  He further alleges that defendants attempted to portray him as homosexual and engaged in gay stereotyping.

Also during this time period, according to plaintiff, despite a directive from IHL to ASU to investigate his grievances, Brown refused to allow such investigation.  As a result, in December 2011, plaintiff made a formal complaint to the federal government based on whistleblower reprisal claims related to the use of educational funds at ASU through the American Recovery and Reinvestment Act of 2009.

On January 20, 2012, the Grievance Committee issued its report, finding that Carr had engaged in misconduct in several respects, the "most troubling" being the appointment of Butler as Department Chair.  According to the complaint, the committee found that Carr had a clear bias against plaintiff, that he influenced

the search committee in an improper manner, and that Butler was not qualified for the position. However, despite the committee's recommendation that a search be reopened, defendants rejected that recommendation and kept Butler in the position. Plaintiff alleges that due to the "continuing retaliation treatment" by defendants, he was forced to take early retirement effective May 15, 2012, which constituted constructive discharge.

Based on these allegations, plaintiff has purported to assert federal claims for violation of the Rehabilitation Act and the Family Medical Leave Act; for violation of his right to free speech guaranteed by the First Amendment; for infringement of his Fourteenth Amendment due process rights; and for conspiracy in violation of his rights under 42 U.S.C. §§ 1983 and 1985. In addition, he has asserted a state law claim for breach of contract. In response to defendants' motion, plaintiff has conceded the conspiracy claim and the FMLA claim. The remaining claims are addressed seriatim.

Rehabilitation Act

In Count I of his complaint, plaintiff asserts a claim for disability discrimination under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, based on his allegations that on account of his disability or perceived disability, defendants refused to evaluate him and give him a raise in January 2012 and forced him into early retirement. He additionally alleges that defendants failed to

7

accommodate his disability by refusing to allow him to teach online courses and requiring him to perform duties that should have been done by an office manager.

Section 504 of the Rehabilitation Act "prohibits discrimination on the basis of disability by recipients of federal funds." E.E.O.C. v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 614 n.5 (5th Cir. 2009); 29 U.S.C. § 794(a) (providing that "[n]o otherwise qualified individual with a disability in the United States [as defined in this title] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."). Claims under the Rehabilitation Act are analyzed under the same standards applicable to claims brought under the Americans with Disabilities Act (ADA), including the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). See Cohen v. Univ. Of Texas Health Sci. Ctr., 2014 WL 523615, at *3-4 (5th Cir. Feb. 11, 2014) (ADA and Rehabilitation Act are jointly interpreted so that jurisprudence interpreting either section is applicable to both) (citations omitted). Under the McDonnell Douglas framework, a plaintiff must first establish a *prima facie* case of discrimination or retaliation. To establish a *prima facie* case of discrimination under the Rehabilitation Act, a plaintiff must show

that (1) he has a disability; (2) he was otherwise qualified for his job; (3) he worked for a program or activity receiving Federal financial assistance; and (4) that he was discriminated against "by reason of his ... disability." <u>Sapp v. Donohoe</u>, 539 Fed. App'x 590, 595 (5th Cir. 2013).

Defendants argue that plaintiff cannot establish a *prima facie* case of disability discrimination as he cannot show he had a qualifying disability. "The threshold issue in a plaintiff's *prima facie* case is a showing that [he] suffers from a disability[.]" <u>Talk v. Delta Airlines, Inc.</u>, 165 F.3d 1021, 1024 (5th Cir. 1999) (per curiam). "To come within the coverage of the [Rehabilitation Act], a person must have a 'physical or mental impairment that substantially limits one or more major life activities." <u>Duncan v. Univ. of Texas Health Science Ctr. at Hous.</u>, 469 Fed. App'x 364, 368-69 (5th Cir. 2012) (quoting 2 U.S.C. § 12102(1)(A)). "These are activities such as 'hearing, speaking, breathing, learning and working.'" <u>Id</u>. (quoting <u>McInnis v. Alamo Cmty. Coll. Dist.</u>, 207 F.3d 280 (5th Cir. 2000)). "An impairment is substantial if it 'substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.'" <u>Lanier v. Univ. of Texas Sw. Med. Ctr.</u>, 527 Fed. App'x 312, 318 (5th Cir. 2013) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). As defendants correctly point out, plaintiff has not described the nature of his alleged disability –

other than to mention unspecified "health problems" and a "spinal cord disorder" – and he has not indicated the manner in which any such condition substantially limits any major life activity. His allegations are manifestly insufficient to state a *prima facie* case.[2]

Moreover, there is no proof that plaintiff suffered an adverse employment action solely on account of any claimed disability. In his response to the motion, plaintiff maintains that his pleading and evidence that he was constructively discharged satisfy the requirement of an adverse employment action. While a constructive discharge does qualify as an adverse employment action, Thomas v. Atmos Energy Corp., 223 Fed. App'x 369, 376 (5th Cir. 2007) (citations omitted), plaintiff's evidence is insufficient to support a finding that he was constructively discharged. Plaintiff notes that

---

[2]    Plaintiff's response does not remedy this shortcoming. Simpson states in his response brief that he was determined by the Social Security Administration to be disabled in August 2011, but he has offered no evidence to support this assertion and further, has not suggested how such a ruling would bear on his burden to prove his claim under the Rehabilitation Act. And he still does not explain the nature of his claimed disability or describe how it substantially limits his ability to perform a major life activity.

Plaintiff's allegation that defendants' failed to accommodate his disability fails for this same reason. See Lanier v. Univ. of Texas Sw. Med. Ctr., 527 Fed. App'x 312, 318 (5th Cir. 2013) (*prima facie* case of discrimination for failure to accommodate requires that plaintiff show, *inter alia*, that he was disabled).

> [a]n employee who resigns may demonstrate constructive
> discharge by two means.  First, she can "offer evidence
> that the employer made her working conditions so
> intolerable that a reasonable employee would feel
> compelled to resign."  <u>Barrow v. New Orleans Steamship
> Assoc.</u>, 10 F.3d 292, 297 (5th Cir. 1994).  Second, an
> employee can prove constructive discharge with evidence
> that she was given an ultimatum requiring her to choose
> between resignation and termination.  <u>Faruki v. Parsons
> S.I.P., Inc.</u>, 123 F.3d 315, 319 (5th Cir. 1997).

<u>David v. Pointe Coupee Parish Sch. Bd.</u>, 247 F.3d 240, 2001 WL

43530, at *2 (5th Cir. 2001).  Plaintiff argues that he has

presented facts to support both alternatives.  First, he contends

that he felt compelled to resign, as would have any reasonable

employee, in view of defendants' failure to promote him to the

position of Department Chair when he was the only qualified

applicant, coupled with defendants' refusal to comply with the

directive of the Grievance Committee, and further in view of

defendants' "continuation of hiring individuals that were in clear

violation of ASU policy."  In the court's opinion, however, even

if plaintiff was the only qualified applicant, plaintiff's

nonselection as Department Chair and defendants' rejection of the

Grievance Committee's recommendation that Butler be removed from

the position, would not have caused a reasonable person to have

felt compelled to resign from his long-time position as professor

at the University.  As to plaintiff's reference to "continuation

of hiring individuals that were in clear violation of ASU policy",

there is nothing in the complaint or in plaintiff's response

affidavit to explain this; nor is there anything alleged or
presented to indicate how the hiring of individuals in violation
of ASU policy might have negatively affected plaintiff to such an
extent he felt compelled to resign.[3]

　　　As to the second alternative method of demonstrating
constructive discharge, plaintiff points out that in her July 2011
letter regarding his unapproved absences, Butler wrote:  "[A]t
this time there is no other alternative other than to not consider
you for employment beyond the contracted nine months in the
future." Plaintiff contends this raises a question of fact as to
whether he was constructively discharged.  In so arguing, he seems
to suggest that this language meant that his contract would not be
renewed once it expired in May 2012 – but if that were the case,
then there was no ultimatum or need for him to have resigned.  Yet

---

　　　[3]　　The laundry list of complaints set forth in plaintiff's
letter of resignation does not support his claim either.  Even if
the list constituted competent summary judgment proof of the
existence of the circumstances about which plaintiff complained –
which it does not, see Winding v. Lard, Civ. Action No.
3:13cv142–DPJ–FKB., 2013 WL 6730097 (S.D. Miss. Nov. 21, 2013
(hearsay not competent summary judgment evidence) – these
circumstances do not support a finding that plaintiff was
constructively discharged.  While some of the items in the list
relate to alleged mistreatment of plaintiff, e.g., retaliation for
whistle blowing on illegal acts, disability discrimination,
unfavorable treatment, at least as many of the items relate to
general institutional deficiencies that would have affected all
employees, e.g., ASU president's pompous behavior, lack of
integrity by ASU administration, non-compliance to University's
mission statement, obvious nepotism, and lack of concern relating
to serious problems that affect the infrastructure of the
University.

plaintiff does not allege that his contract was recommended for nonrenewal.  The letter does not support his claim of constructive discharge.

For the reasons cited, plaintiff's claim under the Rehabilitation Act will be dismissed.

Breach of Contract

In Count II of the complaint, plaintiff alleges that he was constructively discharged in breach of his "continued employment contract" with ASU/IHL.  Defendants contend, first, that plaintiff's claim for breach of contract must be dismissed since plaintiff failed to give the pre-suit notice required by the Mississippi Tort Claims Act.  See Miss. Code Ann. § 11-46-11(1) (requiring that person seeking to bring claim covered by MTCA must file notice of claim with chief executive officer of the governmental entity at least 90 days before instituting suit). While a claim for breach of an implied contract provision is covered by the MTCA and thus would be subject to the MTCA's pre-suit notice provision, see City of Jackson v. Estate of Stewart, 908 So. 2d 703, 711 (Miss. 2005) (holding that MTCA grants immunity to the state and its political subdivisions for 'breach of implied term or condition of any warranty or contract'), this requirement does not apply to actions for breach of the express terms of a contract, see id. (recognizing that state and its political subdivisions may not invoke sovereign immunity to escape

13

their written contractual obligations).  Plaintiff does not identify the provision(s) of his employment contract that he contends were violated but rather broadly alleges that his constructive discharge was a breach of the contract.  To the extent that he may be asserting breach of an implied term of the agreement, his claim is barred for failure to provide the required pre-suit notice.  To the extent he claims his constructive discharge breached an express term of his contract, his claim fails for lack of proof that he was constructively discharged.

As with federal law, the standard for constructive discharge under Mississippi law is exacting:  "In order for a constructive discharge to have occurred the employer must have made conditions so unbearable that in turn the employee reasonably feels compelled to resign."  LaFoe v. Mississippi Empl. Sec. Com'n, 909 So. 2d 115, 118 (Miss. Ct. App. 2005) (citing Hoerner Boxes, Inc. v. Mississippi Empl. Sec. Comm'n, 693 So. 2d 1343, 1347 (Miss. 1997)).  To reiterate, plaintiff's allegations and proof do not even come close to satisfying this standard.  It follows that he has no cognizable claim for breach of contract.

Constitutional Claims: First Amendment and
Fourteenth Amendment Due Process Clause

Plaintiff alleges that defendants "disregarded [his] right" to a grievance hearing" in violation of his Fourteenth Amendment right to due process.  Apparently, this allegation has reference

14

to plaintiff's allegation that defendants failed to afford him a hearing in connection with his formal grievance challenging the selection of Malinda Butler as Department Chair.  He also vaguely alleges that defendants' "wrongful conduct" violated his rights under the First Amendment.

While "Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law," Stotter v. Univ. of Texas at San Antonio, 508 F.3d 812, 821 (5th Cir. 2007) (quoting 42 U.S.C. § 1983), plaintiff has not sued defendants under 42 U.S.C. § 1983 for the alleged violations of the First and Fourteenth Amendments.[4]  Rather, he has brought these claims directly under the Constitution.  Presumably, that is because states, their departments and agencies, and their officials acting in their official capacities are not deemed "persons" and thus are not subject to suit under § 1983.  See Will v. Michigan State Dep't of Police, 491 U.S. 58, 71 & n.10, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (holding with regard to suits for monetary damages, "neither a state or persons acting in their official capacities are 'persons' under § 1983"); Cronen v. Texas

---

[4]   Plaintiff argues in his response memorandum that he has brought a § 1983 claim for violation of his due process rights. The complaint does not support this characterization of the claim.

15

Dept. of Human Servs., 977 F.2d 934, 936 (5th Cir. 1992) ("The state and the agency properly argue that they are not 'persons' for purposes of liability under 42 U.S.C. § 1983 (1988)."). However, in Mawson v. Mississippi State Deptartment of Health, Civil Action No. 3:11CV643TSL-MTP, 2012 WL 6084640 (S.D. Miss. Dec. 6, 2012), this court observed that the Fifth Circuit has been hesitant to find causes of action arising directly from the Constitution as § 1983 provides the means for seeking relief against a state actor who violates the Constitution.  Id. at *1 (citing Hearth, Inc. v. Dep't of Pub. Welfare, 617 F.2d 381, 382-83 (5th Cir. 1980).  See also Mitchell v. City of Hous., 57 F. App'x 211, No. 02-20287, 2003 WL 147729, at *1 (5th Cir. Jan. 7, 2003) (unpublished table decision) (noting that court has "long harbored a great reluctance to allow the pursuit of constitutional causes of action directly"); Berger v. City of New Orleans, 273 F. 3d 1095, No. 01-30200, 2001 WL 1085131, at *1 (5th Cir. Sept. 4, 2001) (unpublished table decision) ("Even the most cursory reading of our case law demonstrates beyond cavil that we have permitted prosecution of such actions directly under the Constitution only when necessitated by a total absence of alternative courses and 'no other means' existed to seek 'redress for flagrant violations of the plaintiff's constitutional rights.'") (quoting Hearth, Inc., 617 F.2d at 382).  Plaintiff has not claimed that he has no other means for obtaining redress.  See Mawson v. Univ. of Miss.

16

Med. Ctr., Civil Action No. 3:11cv574-DPJ-FKB, 2012 WL 6649323, at
*3 (S.D. Miss. Dec. 20, 2012) (rejecting the plaintiff's s
contention that he "has no alternative avenue of redress for his
injuries" as he "could have brought suit against a proper § 1983
defendant").  Accordingly, his claims against ASU and IHL, and
against the individual defendants in their official capacities,
for alleged violations of his rights under the First and
Fourteenth Amendments will be dismissed.

     To the extent these claims are brought against one or more
individual defendants in their individual capacities, they are due
to be dismissed for other reasons.  Regarding his due process
claim, defendants contend that plaintiff had no constitutional
right to a grievance hearing, but that even if such a right did
exist, plaintiff was afforded a hearing, as acknowledged by his
own allegations.  Indeed, it appears that the grievance to which
plaintiff's due process claim is directed relates to his
"demotion" from the interim Department Chair position; yet he had
no arguable property interest in that position; and without a
property interest, he can have no viable due process claim.  See
Harrington v. Harris, 118 F.3d 359, 368 (5th Cir.), cert. denied,
522 U.S. 1016, 118 S. Ct. 603, 139 L. Ed. 2d 491 (1997)
(explaining that to succeed with a claim based on substantive due
process in the public employment context, the plaintiff must show
that he had a property interest/right in his employment, and that

the public employer's termination of that interest was arbitrary or capricious); McDonald v. City of Corinth, Tex., 102 F.3d 152, 155 (5th Cir. 1996) (observing that a claim of procedural due process requires that the plaintiff had a protected property interest in her employment, and that the termination of the interest was effected without the requisite procedural protections). "An employee has a property interest in his employment only when a legitimate right to continued employment exists." McDonald, 102 F.3d at 155 (citing Perry v. Sindermann, 408 U.S. 593, 601-02, 92 S.Ct. 2694, 33 L. Ed. 2d 570 (1972)). Plaintiff's contract with IHL for his position as interim Department Chair recited the following:

> The Employee further acknowledges and agrees that he/she has no property interest in the administrative position named above, serves at the will and pleasure of the university and may be removed from this administrative position at any time, with or without cause.

Moreover, his contract for that administrative position ended May 2011. Thus, there is no arguable basis on which he could claim a property interest in the position. Furthermore, while there may have been a delay in providing a hearing, plaintiff was, in fact, given a hearing on the grievance relating to the selection of Butler as Department Chair. His due process claim will be dismissed.

The basis for plaintiff's allegation that defendants' "wrongful conduct" violated his rights under the First Amendment

is not clear.[5]  He does not identify the defendant or defendants
to whom this allegation refers or the "wrongful conduct" to which
it refers, and he does not indicate in what manner such "wrongful
conduct" by such unspecified defendant or defendants infringed his
rights under the First Amendment.  The First Amendment's Free
Speech Clause – on which this claim is apparently based – protects
public employees from retaliation for protected speech.  <u>Juarez v.
Aquilar</u>, 666 F.3d 325, 332 (5th Cir. 2011).  "To establish a
retaliation claim, plaintiff[] must prove the following elements:
'(1) the plaintiff suffered an adverse employment decision,
(2) the plaintiff's speech involved a matter of public concern,
(3) the plaintiff's interest in speaking outweighed the
governmental defendant's interest in promoting efficiency, and
(4) the protected speech motivated the defendant's conduct.'"  <u>Id</u>.
(quoting <u>Kinney v. Weaver</u>, 367 F.3d 337, 346 (5th Cir. 2004)).
"Adverse employment decisions include 'discharges, demotions,
refusals to hire, refusals to promote, and reprimands.'"  <u>Id</u>.

---

[5]     Given that Count IV of the complaint purports to also
seek relief based on defendants' "wrongful conduct, in violation
of Plaintiff's rights and privileges afforded him under the First
... Amendment," it is curious that neither defendants' motion nor
plaintiff's response brief mentions a First Amendment claim.
However, as it is clear that the complaint does not state a
cognizable claim for relief for violation of the First Amendment,
the claim will be dismissed.  <u>See</u> <u>Carroll v. Fort James Corp.</u>, 470
F.3d 1171, 1177 (5th Cir. 2006) (court may dismiss <i>sua sponte</i> for
failure to state a claim).

(quoting <u>Sharp v. City of Houston</u>, 164 F.3d 923, 933 (5th Cir. 1999)).

Plaintiff alleges that he suffered retaliation by each of the individual defendants.  He alleges that Doris McGowan retaliated against him after he reported to IHL that she had forged his signature on a pay voucher.  However, he does not allege that he suffered an adverse employment action at the hands of McGowan. Plaintiff alleges that Carr expressed disdain for plaintiff's having been a whistleblower; but plaintiff does not tie this allegation to any protected speech.  Likewise, plaintiff alleges that Butler engaged in retaliatory conduct yet does not even suggest what plaintiff may have done that prompted her to retaliate.  He alleges that White took no action in response to his grievance regarding the selection of Butler for Department Chair; but this does not qualify as an adverse employment action, and in any event, plaintiff gives no indication as to reason for White's actions (or inaction).  Brown merely refused to meet with or discuss any issues with plaintiff (which is not an adverse employment action) because he was angry with him for complaining to IHL that he had not been given a grievance hearing (which is not a matter of public concern and hence not protected speech). Plaintiff's putative First Amendment claim thus fails to state a viable claim for relief and will be dismissed.

20

Conclusion[6]

Based on all of the foregoing, it is ordered that plaintiff's complaint in this cause is dismissed with prejudice.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 13th day of June, 2014.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[6]     In his response to defendants' motion, plaintiff argues in support of a § 1983 claim for gender discrimination based on the selection of Malinda Butler as Department Chair and the difference in treatment plaintiff received when he was in the position of Interim Chair.  No such claim has been pled.  In the complaint's "Count V – Conspiracy" (a claim which plaintiff has expressly conceded), plaintiff references an alleged conspiracy by defendants "to deprive Plaintiff of his rights and privileges in violation of 42 U.S.C. § 1983," and he further alleges that "Defendants conspired for the purposes of impeding, hindering, obstructing or defeating Plaintiff from engaging in the due course of justice in the State of Mississippi and in the United States, with the intent to deny him equal protection of the laws, in violation of 42 U.S.C. § 1985."  The court is at a loss to fathom what plaintiff intended by these allegations or to what they are intended to refer; but these statements cannot reasonably be read as asserting a claim for gender discrimination in the nonselection of plaintiff as Department Chair or disparate treatment of him and Butler.